Okay. May it please the Court, Kirby Smith for the Appellant Gerald Morgan. I'd like to reserve three minutes for rebuttal. Okay. Watch the clock. We'll try to help you. Thank you very much for having us and hearing our case. The basic premise of this case is whether Appellant Gerald Morgan was retaliated against for notifying management of his intention to and ultimately for filing an EEO complaint when Appellee issued an accept or be terminated directed reassignment, adding roughly 266 miles to Appellant's normal commute, among other issues. The jury ultimately ended their deliberations at Special Interrogatory 1, which asked whether plaintiffs suffered an adverse action. To reverse a jury verdict on the basis of evidentiary rulings, this Court must conclude that the District Court abused its discretion and that the error was prejudicial. Appellant submits that four decisions were prejudicial error, three items address the harmfulness of the directed reassignment, and one addresses whether Appellant made a protected disclosure prior to Appellee's alleged reassignment decision date of August 30, 2012. Before you get to that aspect of it, can I ask you this? It seems to me that it's only in your reply brief that you contend that the August 2nd threat to file an EEO complaint qualified as a protected activity under both the opposition and the participation clause of Title VII. Since you didn't raise that in your pretrial brief or your opening appellate brief, how can we consider it? Isn't that waived? So I believe the argument has been made that this could constitute both protected opposition and protected participation through the case. You don't mention it, though. I mean, you have to imply it, right? Yes, and I think part of this just goes to the definition of what is protected participation versus protected opposition because we would submit that what Mr. Morgan did, which is on August 2nd when he informed his supervisor, Sherwood, that he was considering filing an EEO complaint against his co-worker, Younger, that that was protected participation. At bottom, didn't the court conclude that there's just no way that a jury could conclude that what was said by the co-worker could constitute racial discrimination? It's kind of a vanilla comment, isn't it? That was the district court's decision, and we believe that decision was improper. Why? Because Mr. Morgan on August 2nd told his supervisor that he was considering filing an EEO complaint based on what was happening to him with his co-worker, Younger. Based on the comment before, and that's what I think both of us are focusing on, what was said that he said precipitated the filing of the EEOC claim, I mean, how could he be offended by that? Is there something that went on before that wasn't discussed in the complaint? Because that alone, you know, basically that should want to play it. What's the matter with that? So I would submit two things in response to that. First would be that the fact that Mr. Morgan went to his supervisor and said, I'm considering filing an EEO complaint. Because of what we just talked about. Because of what was said. That constitutes the initiation of an EEO complaint. But the reason to retaliate would depend upon a serious threat. And the district court's conclusion, which seems to make some sense to me, is that nobody would take that as a serious threat. Your client may have had a subjective belief, but nobody would take it, and the jury couldn't conclude that it was a reasonable belief. So what is there to retaliate against? So I would say when we look at the anti-retaliation law, just the plain language of the law, it does state that opposing any practice made unlawful is protected. And that goes to, I think, the point that you all are raising is, can this be considered a practice unlawful? Can there be a good faith belief that the practice was unlawful? What if we have kind of an eggshell plaintiff concept? If your client was offended if somebody said, I hate daffodils, and they said to him, I hate daffodils, he said, oh, gosh, I'm going to file an EEOC complaint. Is that what we're dealing with here? Well, again, the law says opposing any practice made unlawful or making a charge testifying, assisting, or otherwise participating in an investigation, proceeding, or hearing. And the federal EEO system states in their management directives that a federal employee satisfies the criterion of EEO counsel or contact by exhibiting an intent to begin the EEO process with any agency official logically connected with the process, including supervisors. But it still has to tie back, and both of us have made this point, it still has to be based on something. Now, you know, you've dealt with, we certainly deal with, you know, real racial claims. We get that. But I don't see that here. I'm really struggling with how you can possibly get even something offensive, let alone a racial claim out of what was said by this gentleman. Wouldn't there be a body of law that said you have a protected right to make a frivolous claim, and that's protected activity. It doesn't matter if it has a good faith legal or factual basis. If you don't like something and you initiate EEOC activity, that's enough. I mean, that body of law just does not exist. So Gifford v. Atchison, which we quoted in our brief, states that no legal distinction is to be made between the filing of a charge, which is clearly protected, and the threatening to file a charge, which, again, doesn't speak to the good faith nature. I think this goes to two different concepts in the law, both protected objection and protected participation. And my argument would be the protected objection, that's protected on a good faith belief standard because we're looking for retaliatory animus. So we're looking for does management have a reason to retaliate against this individual employee. And if the individual employee doesn't say anything about filing a complaint, but does say I think this person is discriminating against me, I think this is happening to me because of my race, because of my gender, then that's the good faith belief. If it has that underlying basis, that's the good faith belief. As the employee, you're explaining both what's happening to you and why you think it's happening to you. But I would submit that there's also protected participation because once a supervisor gets the understanding, is given the information to understand that someone intends to file a complaint and then takes action against them, then that intention to file the complaint is the basis for the retaliatory animus. Arguably, what they did was to try to separate these folks at his request, at his request. They tried in northern Arizona, then he was back in the central, then they tried him down in Tucson. But as I understand it, what they did was done almost at the express request of your client because he didn't want to be around the other gentleman. So now I understand you're going to make some claim about the mileage and so on, but aside from that, weren't they just trying to accommodate him to try to lessen the tensions between these two men? The issue is with how they accommodated him. So they did. What should they have done? We would submit on the record there is evidence that there were other options available. And what were they? There were other accommodations that would not have required driving that distance. Specifically, what were they? There were other positions within the central Arizona SSC rather than southern Arizona. Specifically, which ones? I can't give you specific titles for the reassignment. You have a GS rating. He operates within that context. And they seem to be doing everything they can to try to get these folks reconciled. It wasn't working, so they moved him about. And I didn't read anything that said, you know, there was this position, this position, and this position that was available. If they had just offered that to me, I would have been happy. It's just not there, is it? Well, Your Honor, the issue is that, and again, you know, without being a transportation system specialist and knowing what the different terminology means, you know, like Vortac and things like that, it's difficult as a layperson to explain that. I'm certainly not either, but I can read. And I don't find anything in the record that says, you never offered me X, Y, and Z. I made it clear that those positions were available to me at my GS rating. Why didn't you do that? That just didn't happen, did it? Well, his job duties were to go to different Vortac facilities and check them. And Mary Hart gave him a reassignment within the central Arizona SSC that did greatly limit their interactions with each other. And he was acceptable to that. That was an acceptable reassignment. And then Peter Dahlke, there wasn't enough to do, so he went to northern Arizona, right? No. He was sent from that reassignment to the southern Arizona, Your Honor. Okay. I may have misrecalled. I thought he went briefly north. Okay. So then he goes south. But again, for the same reason, trying to separate these two people. And I know you want to talk about the mileage. But I recall you didn't raise the issue of the created anticipation of litigation theory on the vehicle mileage record. So aren't we constrained from considering that unless you can show manifest injustice? And if so, in what way have you done that? So the mileage records were sent back to the jury and included factual impossibilities. But the mileage records of the GOV vehicles at times showed that they had driven negative miles in a month. That's a factual impossibility. Those records cannot possibly be accurate. And their own custodian of the records, Hart, testified that the records were not accurate. And explained in a preamble the correct analysis, right? And because those records were inaccurate and were submitted to the jury, that is the prejudicial error here. So argued to the jury, and the jury didn't buy it. But there's a difference between myself as a lawyer arguing to the jury, don't pay attention to that document, and the judge saying take that document back when you consider it. Jury gets all sorts of evidence. They don't expect to believe all of it. But they can't because the evidence is contradictory. It's their job to sort it out. The fact that you didn't like that evidence, you had the opportunity to argue about the evidence, doesn't tell me it should never have been admitted. The fact that you thought it was a logical impossibility, okay, jury can figure that out. When the evidence is not credible, the custodian of the records themselves says that it's not credible. I don't think that's what the custodian said. She said that the records were not accurate. And explained what was contained in the records. She did explain what was contained in the records, yes, Your Honor. Okay. And so if the jury could infer from what was contained in the records a conclusion, why isn't that admissible evidence? I'm sorry. Can you repeat that if the jury? You're saying there's inaccuracies in the record that was admitted into evidence that the jury had, and you had the opportunity to examine the custodian, to elicit the testimony you wanted to get, and to argue to the jury why they shouldn't place any weight on that evidence. That doesn't tell me why we should set aside the jury verdict. Well, briefly, we were not given the opportunity to discuss the duration argument. That was something that the defendant left for closing. But regarding the exhibits, you're correct. We did have the opportunity to cross-examine Ms. Hart on them. Do you want to save any of your time? It's up to you. Yes, Your Honor. But very briefly, I would submit that it's not a discussion that we should have to have with the jury at all because the exhibit should not have gone back with them. The fact that it did gives it an error of credibility. It should not have been given. I'll reserve the rest of my time. Very well. Ms. Morrison from the government. Good morning. Good morning, and may it please the Court, Christina Morrison on behalf of the Federal Aviation Administration. A jury of Mr. Morgan's peers unanimously held that the FAA did not retaliate against him. And that is important because Mr. Morgan isn't simply asking that the Court reverse an evidentiary ruling. He's asking that the Court throw out the jury's verdict. That is an extraordinary measure that turns on two questions plaintiff did not raise on appeal, specifically the correctness of the jury instructions and the sufficiency of the evidence. Both were correct in this case, and those issues he does raise on appeal don't form a basis to throw out the jury's verdict. So in this matter, the jury's verdict should be preserved. Judge Smith had asked whether or not the argument about adverse action finding of the jury has been waived, and under NITCO, it has been waived. No Rule 50 post-verdict motion was filed, and therefore, it has been filed.  Moreover, in terms of the question of the evidence, the exhibits that were filed, the mileage records goes to the credibility of the evidence. These were business records. Mary Hart testified that she used them on a monthly basis to be able to pay the bills for the cars that were being leased. She noted that the technicians would put the end mileage and the start mileage each month, and that she needed to know the miles to be able to calculate the base rate plus the mileage for payment. So all of the critiques of the mileage records, which did have a negative mileage for some technicians, goes to the credibility, not to the admissibility. And there was plenty of other evidence that was heard from testimony from Mary Hart, even from Mr. Morgan himself about the driving, that the jury could infer and could hear. And the jury heard all of this, and under Landis, deference needs to be given to the jury's verdict here. Counsel, could you address the issue that I inquired about with Mr. Smith? In my reading of what was said to Mr. Morgan, I have great difficulty understanding how it could be offensive, let alone racially offensive. What's the standard of review, if you will, for determining whether something qualifies as a predicate for a valid filing before the EEOC? So it needs to, first of all, be an opposition to an employer practice, which it was not in this case, and under Gifford, even, it has to be opposing something that had an impact on a protected class or a protected group. So we're talking about race, gender, national origin, religion, all of the things that are specifically enumerated under Title VII. And here, Mr. Morgan was able to testify about that conversation, and the specifics of what he testified to don't get us anywhere near there. He simply was asked, why are you here? He told the person to mind his own business. The person says, is that how you want to play it? And he walked away. Nothing implicates a protected group there. And moreover, even Mr. Morgan testified how he interpreted that conversation. He said he thought Mr. Younger was a little bit aggressive. He said he thought Mr. Younger was needling him a little bit. And he said he was concerned because Mr. Younger was a union rep. Those are concerns. Those are complaints. But those don't rise to the level of an EEO complaint. They don't fall under the rubric of Title VII and, therefore, don't qualify as protected activity. Proposing counsel says, all that may be fine, but once you say I'm thinking of filing a complaint, none of that matters. Do you agree with that? I do not agree with that. Under Ninth Circuit precedent, there is a reasonable person standard, and the court's ruling on that was correct. Yes, and this is particular to the opposition clause. It has to fall under something so that any juror could reasonably infer that this went against a protected class, which just has not happened here. Is filing an EEO complaint itself a protected activity? It is, and that would fall under the participation clause, and that's what he did on September 24, 2012. Nobody disputed that, even though it was an e-mail that was filing of the EEO claim. Is threatening to file an equal opportunity complaint a protected activity? It can be, given the context, and that's what plaintiff has raised on appeal here is that it was in opposition to discriminatory behavior. And the standard for that is there's a reasonable person belief that it is discrimination, and it must be inferred to have fallen under some class that is protected by Title VII. So as to the filing of the e-mail or mailing the e-mail on September 24, that's the participation clause. August 2 just doesn't get us anywhere close to the opposition clause here. Let me separate from the facts of this case and pose a hypothetical that has an employee come into the supervisor and say, I don't like the way that Jones is treating me. I'm going to file a complaint. I think it's a violation of he's discriminating against me. It's a violation of equal opportunity. I'm going to file a complaint. The supervisor is not told what the substance, other than saying it's Jones, not told the details of the interaction that prompts this threat to file a complaint. Does the reasonableness standard apply in that case? Does the supervisor have to be told enough to understand the underlying basis of the complaint? Or would the supervisor's retaliation in response to that threat itself become actionable as retaliation to a protected activity? It's not protected activity. There does need to be the reasonable standard does need to be met. So that's why the context, the factual development is so important. And in particular, the opposition clause is specific to opposing employer behavior. So if in your hypothetical, if he's complaining about a co-worker, that too is a problem for them. And even this court in Silver, which was cited in the Crown-Zellerbach case, indicated in that case there was a complaint about an employee who had actually made a racial slur. And a person reported that, but because she wasn't complaining about an employer practice, her termination wasn't seen as an adverse action because she hadn't engaged in protected activity. I'm happy to answer any other questions on behalf of the court. Other questions? I will close and say that the jury sat for over two days and heard evidence and testimony duly deliberated and issued its decision. And we do ask that this court affirm. Thank you. Thank you. Very well. Mr. Smith, you have a little rebuttal time. Thank you, Your Honor. So I think it's important to discuss that as a federal employee, they're not private employees. They don't have the ability to go to the EEOC, go to EEOC.gov and file a charge immediately. They don't have that ability. They have to initiate contact with an EEO counselor first. And the EEO management directives for the Equal Employment Opportunity Commission state that making a threat to file a complaint to a supervisor is considered initiating EEO contact. So when we were discussing, you know, filing a complaint as a protected activity, if you're a federal employee at least, initiating EEO contact is the filing of the complaint. That's the first step that they must take. So from your perspective, it really doesn't matter whether there's a protected activity at all. If the employee says to the supervisor, I'm going to file an EEO complaint, that in and of itself becomes a protected activity and the procedure becomes the protected activity. Is that what you're saying? At the end of the day, the retaliatory laws are here to protect employees from being retaliated against. True. Due to either wanting to use the underlying protections or making an objection that's covered by the protections. So, yes, I would. You seem to be saying that just by saying I'm going to file an EEO complaint, it doesn't matter whether there's anything to back it up. As long as that's said, that in and of itself qualifies as a protected activity. Is that right? So, briefly, an example, if an employee went to an employer and said, I'm going to file a discrimination complaint, and that employer immediately began retaliating against them without the employer or without the employee having ever been given a chance to even discuss why, that would be protected. So, yes, there are scenarios that exist where the initiation of an EEO complaint should be protected. Let me ask my colleague whether either has additional questions for Mr. Smith. I think not. Well, thanks to both counsel for your argument. We appreciate it. The case of Morgan v. Buttigieg is submitted, and the court stands adjourned for the day. Thank you, Your Honor.
judges: CLIFTON, SMITH, Reiss